IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00025-01-CR-W-HFS |
| | ) | |
| KHALID OUAZZANI, | ) | |
| | ) | |
| Defendant. | ) | |

<u>PLEA AGREEMENT</u>

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **<u>The Parties.</u>** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, J. Daniel Stewart, Assistant United States Attorney, David M. Ketchmark, First Assistant United States Attorney, Brian P. Casey, Assistant United States Attorneys, and M. Alexander Menzel, Jr., Special Assistant United States Attorney, and the defendant, Khalid Ouazzani ("the defendant"), represented by attorney Robin Fowler.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **<u>Defendant's Waiver of Indictment and Guilty Plea.</u>** The defendant agrees to and hereby does waive his right to grand jury indictment and agree to the filing of a one count

Information charging a violation of 18 U.S.C. § 2339B (conspiracy to provide material support to a terrorist organization).

Defendant also agrees to plead guilty to (1) Count Eleven of the Indictment (case no. 10-00025-01-CR-W-HFS) charging him with a violation of 18 U.S.C. § 1344, that is, bank fraud; (2) Count Twenty-Three of the Indictment (case no. 10-00025-01-CR-W-HFS) charging him with a violation of 18 U.S.C. § 1956, that is, money laundering; and (3) the one count Information (to be filed in case no. 10- 00025-01-CR-W-HFS) charging him with a violation of 18 U.S.C. § 2339B, that is, conspiracy to provide material support to a terrorist organization. A copy of the Indictment setting forth the charges in Counts Eleven and Twenty-Three and the Information are incorporated by reference.

By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

**A. Count Eleven: Bank Fraud-Union Bank.**

In April 2007, Ouazzani obtained a $175,000 loan from Union Bank as a line of credit for his business, Hafssa LLC, d/b/a Truman Used Auto Parts, 8009 E. Truman Road, Kansas City, MO, which was in the retail business of buying and selling used auto parts and used motor vehicles. Union Bank is a federally insured financial institution. Under the terms of the loan, the funds were to be used as working capital for the business. Ouazzani submitted a personal guarantee for this loan to this company, which Ouazzani owned, operated, and controlled. Ouazzani submitted false financial information about himself and the company to obtain the loan, and he used at least some

-2-

of the proceeds of the loan for personal and other purposes unrelated to the "working capital" purpose required by the bank.

In order to obtain this loan, Ouazzani submitted the following false and fraudulent financial information:

a) Material false and fraudulent personal financial information in connection with his personal guarantee, including (1) a copy of a 2005 federal income tax return which substantially overstated the amount of income he had in that year as compared with the 2005 federal income tax return which Ouazzani actually filed with the Internal Revenue Service; with (2) approximately nine (9) parcels of real estate, which he had purchased at tax foreclosure sales, which were listed with inflated values and which failed to disclose that Ouazzani was married so that his wife had a spousal interest in the real estate; and

b) Material false and fraudulent financial information on the business inventory of the business, Hafssa LLC d/b/a Truman Used Auto Parts, including a borrowing base certificate dated May 17, 2007, substantially overstating the amount of business inventory and cash, claiming that the business inventory and cash were over $680,000 whereas the actual business inventory and cash were substantially less than that amount.

The Union Bank loan was supposed to be used as "working capital" for Ouazzani's business, Hafssa LLC d/b/a Truman Used Auto Parts. After obtaining the loan in April 2007, however, Ouazzani withdrew the entire $181,000 from the line of credit by July 2007 in the following draws: (1) 04/25/2007–$75,000; (2) 04/30/2007–$75,000; (3) 05/17/2007–$21,000; (4) 07/02/2007–$5,000; and (5) 07/17/2007–$5,000.

Ouazzani did not use substantial amounts of the funds from the loan for working capital for his business, as required by the terms of the loan. Instead, he used substantial amounts of these funds for various personal purposes. Ouazzani transferred approximately $165,000 of the funds to accounts he had at Bank of America. Ouazzani used part of the proceeds of the Union Bank loan to purchase an apartment in United Arab Emirates.                .

Ouazzani made only approximately $13,000 in payments on this loan. On September 8, 2008, Union Bank wrote off the loan then in the amount of $174,028.50 as uncollectible. On February 11, 2009, Union Bank obtained a civil default judgment against Ouazzani and Hafssa LLC in the amount of $177,001.84.

**B. Count Twenty-Three: Money Laundering-Union Bank Funds.**

On or about May 23, 2007, Ouazzani caused a wire transfer of $112,830 from an account at Bank of America, Kansas City, MO, to an account in the name of New World Star Real Estate at Haabib Bank Limited, Dubai, United Arab Emirates. Ouazzani knew that the funds for this wire transfer included funds obtained from the $175,000 commercial loan line of credit from Union Bank and that he had obtained these funds by material false and fraudulent representations to Union Bank in order to obtain this loan.

The funds for the $112,830 wire transfer came from draws of $75,000, $75,000, and $21,000 on the working capital commercial loan line of credit. In order to generate these funds, the defendant first caused three counter checks totaling $115,000 and two other checks totaling $60,000 to be drawn on an account of Hafssa LLC, d/b/a Truman Used Auto Parts at Union Bank. The defendant deposited all of these checks into an account at Bank of America. The $112,830 wire transfer came

-4-

from the Bank of America account into which checks drawn on the Union Bank account had been deposited.

The defendant conducted the transactions relating to the $112,830 wire transfer in order to make it more difficult to trace the funds. Once the funds arrived in the United Arab Emirates, the defendant caused them to be used for the purchase of an apartment, which defendant later sold, resulting in a profit to him of approximately $17,000.

**C. One Count Information: Conspiracy to Provide Material Support to a Terrorist Organization.**

Al-Qaida had been designated as a foreign terrorist organization by the United States Department of State beginning on October 8, 1999, and has been regularly re-designated as such at various times up to the present. Al-Qaida has engaged in and continues to engage in "terrorist activity" [as defined in section 212(a)(3)(B) of the Immigration and Nationality Act], and Al-Qaida has engaged in and continues to engage in "terrorism" [as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989]. Defendant knew the nature of the organization of Al-Qaida, including the purposes of the organization, and acts of terrorism it had engaged in over the years, and intended to further these purposes when he had the discussions and did the acts described below.

Over a period of years, Defendant and others discussed various ways they could support Al-Qaida. One of the ways the Defendant and the others agreed that they could support Al-Qaida was to provide currency to it. In 2007 and 2008, Ouazzani personally provided over $23,000 in United States currency for the use and benefit of Al-Qaida. Defendant and others also discussed how they could perform other tasks at the request of and for the benefit of Al-Qaida. Some of defendant's

conversations with others also involved plans for them to participate in various types of actions to support Al-Qaida, including fighting in Afghanistan, Iraq, or Somalia. Defendant and the others he was communicating with about Al-Qaida took various steps and used various techniques to disguise their communications about their plans and assistance to support Al-Qaida.

With respect to the total of $23,000 actually contributed to Al-Qaida, in or about August, 2007, defendant agreed to contribute approximately $6,500 to Al-Qaida through another individual and caused this individual to pay such funds to Al-Qaida on behalf of defendant. In or about November, 2007, defendant repaid the individual for the $6,500 funds previously sent to Al-Qaida through a wire transfer of funds from an account of the defendant at Bank of America, Kansas City, Missouri, to an account of the individual in United Arab Emirates. The wire transfer of funds came from the defendant's sale of Hafssa LLC d/b/a Truman Used Auto Parts. In or about June or July, 2008, defendant agreed to provide a total of $17,000 to Al-Qaida, representing his profits from the sale of real property in United Arab Emirates, owned by defendant and another individual. Defendant requested that this individual pay this $17,000 to and for the use of Al-Qaida.

In or about June, 2008, Ouazzani formally swore an oath of allegiance to Al-Qaida through another individual with whom Ouazzani had been communicating for some period of time about supporting Al-Qaida.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands

and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to the following counts of the indictment or information, the maximum penalties which the Court may impose are the following:

a) **Count Eleven-Bank Fraud:** Bank fraud under 18 U.S.C. § 1344 is a Class B felony and is punishable by not more than 30 years imprisonment, $1,000,000 fine, 5 years of supervised release, an order of restitution, and a mandatory $100 special assessment;

b) **Count Twenty-Three-Money Laundering:** Money laundering under 18 U.S.C. § 1956 is a Class C felony and is punishable by not more than 20 years imprisonment, $500,000 fine, 3 years of supervised release, and a mandatory $100 special assessment;

c) **One count Information-Conspiracy to provide material support to a terrorist organization:** Conspiracy to provide material support to a foreign terrorist organization is a Class C felony and is punishable by not more than 15 years imprisonment, $250,000 fine, 3 years of supervised release, and a mandatory $100 special assessment.

The $100 mandatory special assessment per felony count of conviction must be paid in full at the time of sentencing. The defendant further understands that each of the offenses to which he is pleading guilty is a felony with the Class of felony listed above.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five (5) years; and the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three (3) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five (5) years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

-8-

j. The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 18 U.S.C. § 982(b)(1)). With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

k. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2006 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets.

l. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the crimes charged in the indictment or in the information for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss the remaining counts of the indictment at sentencing.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the

-9-

United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally

-10-

accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the Government submits, but the defendant may not agree, as follows:

a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable".

Bank Fraud and Money Laundering Guidelines.

b. The bank fraud and money laundering counts of the indictment are "closely related counts" under U.S.S.G. § 3D1.2.

Bank Fraud.

c. The applicable Guidelines section for the offense of bank fraud is U.S.S.G. § 2B1.1(a), which provides for a base offense level of 7.

d. Based on a loss of between $400,000 to $1,000,000, under § 2B1.1(b)(1)(H), there is an increase of 14 levels.

e. The adjusted offense level for bank fraud is therefore level 21.

Money Laundering.

f. The applicable Guidelines section for the offense of money laundering is U.S.S.G. § 2S1.1(a), which provides for a base offense level of the "offense level for the underlying offense from which the

-11-

laundered funds were derived." The offense level for the underlying offense of bank fraud is 21.

g. There is an increase of 2 levels under § 2S1.1(2)(B) because the offense of conviction is under 18 U.S.C. § 1956.

h. There is an increase of 2 levels under § 2S1.1(b)(3) for "sophisticated laundering" based on multiple levels of transactions, foreign financial accounts, and other factors.

i. If the foregoing computation is correct, the adjusted offense level for money laundering is 25.

Material Support to a Terrorist Organization Guidelines.

j. The applicable Guidelines section for the offense of material support to a terrorist organization is U.S.S.G. § 2M5.3, which provides for a base offense level of 26.

k. There are no applicable specific offense characteristics under § 2M5.3(b).

l. The offense level for material support to a terrorist organization is 26.

Chapter Three Adjustments.

m. There is an increase of 12 levels under U.S.S.G. § 3A1.4 for Terrorism, which is applicable both to the bank fraud and money laundering group of offenses and to the material support to a terrorist organization.

n. Under § 3A1.4, the defendant's criminal history category is increased to Category VI.

o. With the application of the Terrorism enhancement, the adjusted offense level for bank fraud and money laundering is level 37 and the adjusted offense level for material support to a terrorist organization is level 38, and the Criminal History Category is VI.

p. Under U.S.S.G. § 3D1.4, there is an increase of 2 levels based on two groups of offenses, one group for bank fraud and money laundering and one group for material support to a terrorist

-12-

organization, and the total adjusted offense level for all offenses becomes level 40.

q. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility.

Other Guideline Agreements.

r. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty.

s. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable."

t. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

-13-

u.  The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11.  **Effect of Non-Agreement on Guidelines Applications**.  The parties understand, acknowledge and agree that te are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.  As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12.  **Change in Guidelines Prior to Sentencing.**  The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option.  If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13.  **Government's Reservation of Rights.**  The defendant understands that the United States expressly reserves the right in this case to:

a.  oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b.  comment on the evidence supporting the charges in the indictment or information;

c.  oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed,

-14-

even if the Court chooses not to follow any recommendation made by the United States; and

  d. oppose any post-conviction motions for reduction of sentence, or other relief.

  **14. <u>Waiver of Constitutional Rights.</u>** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

  a. the right to plead not guilty and to persist in a plea of not guilty;

  b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against him;

  e. the right to compel or subpoena witnesses to appear on his behalf; and

  f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

-15-

**15. <u>Waiver of Appellate and Post-Conviction Rights</u>.**

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly retains his right to appeal any Sentencing Guidelines issues that have not been agreed upon by the parties. However, the defendant otherwise expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. <u>Financial Obligations</u>.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

> a. The Court must order restitution to the victims of the bank fraud offenses to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

-16-

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 per count by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

f. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars

-17-

($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Agreement to Destruction of Biological Evidence.** In accordance with 18 U.S.C. § 3600A(c)(2), the defendant knowingly and voluntarily waives his right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in his case. Defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides

-18-

information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**21. <u>Defendant's Representations</u>.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**22. <u>No Undisclosed Terms</u>.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and

that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Beth Phillips
United States Attorney


Dated: <u>May 19, 2010</u>   <u>/s/ *J. Daniel Stewart*</u>
          J. Daniel Stewart
          Assistant United States Attorney

Dated: <u>May 19, 2010</u>   <u>/s/ *David M. Ketchmark*</u>
          David M. Ketchmark
          First Assistant United States Attorney

Dated: <u>May 19, 2010</u>   <u>/s/ *Brian P. Casey*</u>
          Brian P. Casey
          Assistant United States Attorney

Dated: <u>May 19, 2010</u>   <u>/s/ M. Alexander Menzel, Jr.</u>
          M. Alexander Menzel, Jr.
          Assistant United States Attorney

I  have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment and information.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.

Dated: <u>May 19, 2010</u>  <u>/s/ Khalid Ouazzani</u>
Khalid Ouazzani
Defendant


I am defendant Khalid Ouazzani's attorney.  I have fully explained to him his rights with respect to the offenses charged in the indictment and formation.  Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case.  I  have carefully reviewed every part of this plea agreement with him.  To my knowledge, Khalid Ouazzani's decision to enter into this plea agreement is an informed and voluntary one.

Dated: <u>May 19, 2010</u>  <u>/s/Robin Fowler</u>
Robin Fowler
Attorney for Defendant

-21-